# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

EVIER DIAZ PAEZ,

    Petitioner

v.

DWIGHT NEVEN, et al.,

    Respondents

Case No.: 2:16-cv-02737-JAD-NJK

**Merits Order
Denying Habeas Relief**

[ECF No. 10]

Petitioner Evier Diaz Paez was sentenced to 15 years to life in prison with the possibility of parole after being found guilty in Nevada state court of attempt murder with use of a deadly weapon, battery with use of a deadly weapon resulting in substantial bodily harm, and first-degree kidnapping with use of a deadly weapon.[1]  In a thirteen-count petition, Paez seeks a writ of habeas corpus under 28 U.S.C. § 2254 based on claims that his trial and appellate counsel were ineffective and that the state district court erroneously excluded evidence.[2]  Having evaluated the merits of those claims, I find that habeas relief is not warranted, so I deny Paez's petition, deny him a certificate of appealability, and close this case.

## Background

### A.  The facts underlying Paez's conviction[3]

Paez's conviction arises from the alleged 2007 shooting of Tremayne Adamson by a man known to Adamson only as "Bounce."  Adamson testified that on October 14, 2007, a woman he knew as Ginger Sanford invited him to a birthday party at her house.  Sanford picked Adamson up and drove him to her house for the party.  There, Adamson recognized an individual with the nickname "Bounce."  Adamson had met Bounce on two prior occasions, including one at Bounce's apartment.

---

[1] ECF No. 27-9.

[2] ECF No. 10.

[3] These facts are taken from the trial transcripts.  ECF Nos. 27-1, 27-2.  For simplicity's sake, I cite to these exhibits generally for this entire background section.

Adamson had asked Sanford to drive him home.  Sanford told Adamson that because she was too tired to drive, Bounce would give him a ride.  Bounce drove the vehicle while Sanford sat in the front passenger seat and Adamson sat in the rear passenger-side seat.  Adamson did not give directions to Bounce but assumed that Sanford had.  Bounce drove to an industrial development near Adamson's home and stopped the car.  Bounce said that he had to urinate and got out of the car.  He returned to the passenger-side of the car holding a small black revolver. He pointed the revolver at Adamson and asked "[do you] know where [my] stuff is?"  Bounce then shot Adamson three times, hitting Adamson twice in his torso and once in his arm.  Bounce repeated the question and then shot Adamson three more times hitting Adamson twice in his head and once again in his arm.  Sanford remained in the front passenger seat and did not react.

After shooting Adamson, Bounce returned to the driver's seat and began driving.  While driving, Bounce reached his arm into the backseat to push Adamson's head down.  Adamson unlocked the door and dove out of the car while the car was still moving.  Bounce drove off and did not turn the car around.  Adamson began walking down the street towards his home while attempting to flag down cars.  One motorist slowed down to observe Adamson and called 911. After walking about a quarter of a mile, Adamson was located along the road by emergency responders, who provided medical assistance before transporting Adamson to a hospital.  During questioning from a paramedic at the scene, Adamson identified Bounce as the individual who shot him.  On the night that he was shot, Adamson had a glass pipe and lighter in his pocket.  He testified that although he was regularly smoking meth in 2007, he did not use drugs on the night that he was shot.

On the same night as the shooting while at the hospital, Adamson spoke to a detective identifying Sanford by her first name "Ginger," because Adamson did not know her last name. Adamson also identified Sanford's father by his full name and identified the shooter by the name of "Bounce."  During an interview with detectives two days after the shooting, Adamson described Bounce as "a Puerto Rican male in—approximately in his 30s, very tall, about 6'3", with a large build, short hair."  He also identified the apartment building where he had visited Bounce on a prior occasion.  Detectives retrieved identifying information for the individuals who

rented the apartments in the building.  Detectives conducted a photographic line-up in which Adamson identified Paez as the individual who shot him.

While he was in custody, Paez made several telephone calls that were recorded.  Based on such calls between Paez and an individual named Paula Babich, detectives obtained and executed a search warrant on Paez's mother's home.  Detectives retrieved handwritten notes containing a telephone number for Sanford from his mother's home.  Detectives did not locate the weapon (a .22 caliber firearm) used to shoot Adamson.  During his recorded telephone calls, Paez referred to an individual by the name of "Maria," whom detectives determined was Sanford.  Paez also spoke to Sanford directly over the telephone, expressed that he loved her, and spoke to her about covering the tattoo of his initials on her arm.

**B.    Procedural history**

Paez was charged with attempt murder with use of a deadly weapon, battery with use of a deadly weapon resulting in substantial bodily harm, and first-degree kidnapping with use of a deadly weapon.[4]  The state district court assigned counsel from the public defender's office to represent Paez.[5]  Trial was scheduled for May 3, 2010.  Shortly before trial was set to begin, counsel discovered that the public defender's office previously represented Adamson, and counsel filed a motion to withdraw on April 28, 2010.[6]  The public defender's office represented Adamson in a matter that closed in 2005 and in which Adamson was adjudicated guilty of conspiracy to commit theft, which is a gross misdemeanor and a crime of dishonesty.[7]  Counsel argued that he "would be expected and required to attack the credibility of [Adamson], a former client."[8]  The state district court denied counsel's motion to withdraw, finding that counsel could

---

[4] ECF No. 26-3.

[5] ECF No. 26-27.

[6] ECF Nos. 26-25; 26-27.

[7] ECF Nos. 26-25 at 4; 26-27 at 3.

[8] ECF No. 26-7 at 3.

continue to represent Paez.[9]  The state district court imposed a "Chinese wall" so counsel was required to be screened or denied access to confidential or privileged information related to Adamson and his 2005 criminal matter.[10]

Following a jury trial, Paez was found guilty on all counts[11] and sentenced to 15 years to life in prison with the possibility of parole.[12]  He appealed, and the Nevada Supreme Court affirmed the judgment of conviction.[13]  Paez then filed a state habeas petition.[14]  The state district court denied his state habeas petition and the Nevada Supreme Court affirmed that denial.[15]

After Paez filed his federal habeas corpus petition,[16] the respondents moved to dismiss.[17] I granted that motion in part, finding, *inter alia*, that Grounds 4, 5, 7, in part, 8, 9, except as to 9(d), 12, and 15 were unexhausted.[18]  I then ordered Paez to decide how to proceed, and he abandoned his unexhausted claims.[19]  The respondents answered the remaining claims in Paez's petition,[20] and Paez replied.[21]

---

[9] ECF No. 26-29 at 23.

[10] *Id.* at 15, 23.

[11] ECF No. 27-4.

[12] ECF Nos. 27-8; 27-9.

[13] ECF No. 28-5.

[14] ECF No. 28-8.

[15] ECF Nos. 28-20; 28-4.

[16] ECF No. 10.

[17] ECF No. 25.

[18] ECF No. 43.

[19] ECF Nos. 43, 44, 46.

[20] ECF No. 51.

[21] ECF No. 54.

In Paez's thirteen remaining grounds for relief, he alleges the following violations of his federal constitutional rights:

1. Denial of effective assistance of counsel because the state district court assigned trial counsel that had a conflict of interest.

2. Denial of effective assistance of counsel because the public defender's office failed to perform a timely conflict check.

3. Denial of effective assistance of counsel because the state district court permitted screened trial counsel to continue to represent Paez.

4. Denial of effective assistance of counsel because the district attorney's office failed to timely disclose trial counsel's conflict of interest.

6. Denial of due process rights because the state district court excluded evidence that Paez did not own a .22 caliber revolver.

7. Denial of due process rights because of the admission of in- and out-of-court identification.

9D. Denial of effective assistance of appellate counsel because appellate counsel failed to raise an issue on appeal.

10. Denial of due process because of the cumulative effect of ineffective-assistance.

11. Denial of effective assistance of appellate counsel because of cumulative errors.

12. Denial of effective assistance of counsel because of a conflict of interest.

13. Denial of effective assistance of counsel because trial counsel failed to object to the photographic line-up.

14. Denial of effective assistance of counsel because of trial counsel failed to call a witness.

15. Denial of effective assistance of counsel because trial counsel failed to obtain an expert witness.

## Discussion

### A.   Legal standards

#### 1.   *Antiterrorism and Effective Death Penalty Act (AEDPA)*

If a state court has adjudicated a habeas corpus claim on its merits, a federal district court may only grant habeas relief with respect to that claim if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established

Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[22]   A state court acts contrary to clearly established federal law if it applies a rule contradicting the relevant holdings or reaches a different conclusion on materially indistinguishable facts.[23]   And a state court unreasonably applies clearly established federal law if it engages in an objectively unreasonable application of the correct governing legal rule to the facts at hand.[24]   Section 2254 does not, however, "require state courts to *extend*" Supreme Court precedent "to a new context where it should apply" or "license federal courts to treat the failure to do so as error."[25]   The "objectively unreasonable" standard is difficult to satisfy;[26] "even 'clear error' will not suffice."[27]

Habeas relief may only be granted if "there is no possibility [that] fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents."[28] As "a condition for obtaining habeas relief," a petitioner must show that the state-court decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement."[29]   "[S]o long as 'fairminded jurists could disagree' on the correctness of the state court's decision," habeas relief under Section 2254(d) is precluded.[30]   AEDPA "thus imposes a 'highly deferential standard for

[22] 28 U.S.C. § 2254(d).

[23] *Price v. Vincent*, 538 U.S. 634, 640 (2003).

[24] *White v. Woodall*, 134 S. Ct. 1697, 1705–07 (2014).

[25] *White*, 134 S. Ct. 1705–06.

[26] *Metrish v. Lancaster*, 569 U.S. 351, 357–58 (2013).

[27] *Wood v. McDonald*, 135 S. Ct. 1372, 1376 (2015) (per curiam) (citation omitted); *see also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question . . . is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold.").

[28] *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

[29] *Id.* at 103.

[30] *Id.* at 101.

6

evaluating state-court ruling,' . . . and 'demands that state-court decisions be given the benefit of the doubt.'"[31]

If a federal district court finds that the state court committed an error under § 2254, the district court must then review the claim de novo.[32]  The petitioner bears the burden of proving by a preponderance of the evidence that he is entitled to habeas relief,[33] but state-court factual findings are presumed correct unless rebutted by clear and convincing evidence.[34]

### 2.    Standard for Federal Habeas Review of an Ineffective-Assistance Claim

The right to counsel embodied in the Sixth Amendment includes "the right to the effective assistance of counsel."[35]  Counsel can "deprive a defendant of the right to effective assistance[] simply by failing to render 'adequate legal assistance[.]'"[36]  In the hallmark case of *Strickland v. Washington*, the United States Supreme Court held that an ineffective-assistance claim requires a petitioner to show that: (1) his counsel's representation fell below an objective standard of reasonableness under prevailing professional norms in light of all of the circumstances of the particular case;[37] and (2) it is reasonably probable that, but for counsel's errors, the result of the proceeding would have been different.[38]

A reasonable probability is "probability sufficient to undermine confidence in the outcome."[39]  Any review of the attorney's performance must be "highly deferential" and must

---

[31] *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citations omitted).

[32] *Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

[33] *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

[34] 28 U.S.C. § 2254(e)(1).

[35] *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)).

[36] *Id.* (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 335–36 (1980)).

[37] *Strickland*, 466 U.S. at 690.

[38] *Id.* at 694.

[39] *Williams v. Taylor*, 529 U.S. 362, 390–91 (2000).

adopt counsel's perspective at the time of the challenged conduct so as to avoid the distorting effects of hindsight.[40]  "The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practice or most common custom."[41]  The burden is on the petitioner to overcome the presumption that counsel made sound trial-strategy decisions.[42]

The *Strickland* standard also applies to appellate counsel.[43]  Appellate counsel does not have a constitutional obligation to raise every nonfrivolous issue requested by the appellee.[44]  "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues."[45]  A petitioner must show that counsel unreasonably failed to discover and argue nonfrivolous issues.[46]  It is inappropriate to focus on what could have been done rather than focusing on the reasonableness of what counsel did.[47]  The petitioner must prove that, but for counsel's errors, he would have prevailed on appeal.[48]

The United States Supreme Court has described federal review of a state supreme court's decision on an ineffective-assistance claim as "doubly deferential."[49]  So, the federal court must "take a 'highly deferential' look at counsel's performance . . . through the 'deferential lens of §

---

[40] *Strickland*, 466 U.S. at 689.

[41] *Harrington*, 562 U.S. at 104.

[42] *Id.*

[43] *Smith v. Robbins*, 528 U.S. 259, 285 (2000) (citation omitted) (citing *Strickland*, 466 U.S. at 687).

[44] *Jones v. Barnes*, 463 U.S. 745, 751 (1983).

[45] *Id.* at 751–52.

[46] *Delgado v. Lewis*, 223 F.3d 976, 980 (9th Cir. 2000) (citation omitted).

[47] *Williams v. Woodford*, 384 F.3d 567, 616 (9th Cir. 2004) (citation omitted).

[48] *Smith*, 528 U.S. at 285 (citation omitted).

[49] *Cullen*, 563 U.S. at 190 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)).

2254(d)'"[50] and consider only the record that was before the state court that adjudicated the claim on its merits.[51]

**B.    Evaluating Paez's remaining grounds**

Paez alleges five claims related to the issue that his trial counsel was rendered ineffective because his counsel had a conflict of interest.  He alleges two claims of ineffective-assistance related to his appellate counsel.  Paez also asserts multiple claims that his trial counsel was ineffective for failing to file a motion to suppress and for failing to call a lay witness as well as an expert witness.  Finally, Paez alleges that he was denied his constitutional rights as a result of the state district court's rulings on the introduction of evidence.

### 1.    *Grounds 1 through 4—ineffective assistance re: trial counsel's conflict of Interest*

In Grounds 1 through 4, Paez asserts claims related to the allegation that he was denied effective assistance of counsel because his trial counsel had a conflict of interest.  In Ground 1, Paez alleges that he was denied effective assistance of counsel when the state court assigned a deputy public defender to represent him though the public defender's office had previously represented Adamson, the victim-witness in Paez's case.[52]  In Ground 2, Paez alleges that his counsel was rendered ineffective because the public defender's office failed to perform a timely "conflict check."[53]  In Ground 3, Paez asserts that the state district court erroneously permitted counsel to continue to represent him by imposing a "Chinese wall" or screening Paez's counsel from confidential or privileged information.[54]  In Ground 4, Paez asserts that the district attorney's office's failure to timely disclose the conflict of interest violated his right to effective-

---

[50] *Id.*

[51] *Id.* at 181–84.

[52] ECF No. 10 at 3.

[53] *Id.* at 8.

[54] *Id.* at 11–12.

assistance-of-counsel.[55]  On direct appeal, the Nevada Supreme Court found these claims

meritless:

> Paez contends that he was deprived of conflict-free counsel in violation of the federal and state constitutions and the Nevada Rules of Professional Conduct.  He specifically claims that the justice court should have conducted a conflicts check, the public defender's office should have conducted a conflicts check, the district court should have urged the public defender's office to seek written waivers instead of erecting a "Chinese wall," and the district attorney's office should have disclosed the conflict sooner.
> …
>
> The record reveals that the public defender's office represented Paez's victim in an unrelated matter four years before the instant offense.  Paez and the victim were not represented by the same public defenders.  The potential conflict was discovered shortly before trial.  And the district court heard argument on the conflict, established a "Chinese wall" to protect the victim's privileged information, and denied the deputy public defender's motion to withdraw.  Given this record, we conclude that Paez has not demonstrated the existence of an actual conflict, the potential conflict could not be imputed to Paez's deputy public defender, the district court's decision to screen the deputy public defender was a prudent measure, and the late discovery and notice of the potential conflict was of no consequence.  [FN2]
>
> [FN2]  The prosecutor's special responsibilities under RPC 3.8(d) are not implicated here because the existence of a potential conflict is not exculpatory evidence or information.[56]

I find that the Nevada Supreme Court's rejection of Paez's claims was neither contrary to

nor an unreasonable application of clearly established laws as determined by the United States

Supreme Court.  An error by counsel, even if professionally unreasonable, does not warrant

setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.[57]

An exception to the usual *Strickland* prejudice requirement exists, however, if "counsel [was]

burdened by an actual conflict of interest."[58]  "[P]rejudice will be presumed only if the conflict

has significantly affected counsel's performance—thereby rendering the [outcome] unreliable,

---

[55] *Id.* at 14.

[56] ECF No. 28-5 at 2, 4.

[57] *Strickland*, 466 U.S. at 691.

[58] *Id.* at 692. *See also United States v. Walter-Eze*, 869 F.3d 891, 900 (9th Cir. 2017).

even though the *Strickland* prejudice cannot be shown."[59]  To show "an actual conflict of interest," a petitioner must demonstrate an "adverse effect" on counsel's performance.[60]  "[A]n actual conflict of interest means precisely a conflict that affected counsel's performance — as opposed to a mere theoretical division of loyalties."[61]

The Nevada Supreme Court reasonably rejected Paez's claims asserted in Grounds 1 through 4, concluding that Paez had not demonstrated an actual conflict, the potential conflict could not be imputed to the deputy public defender who represented Paez at trial, and "the late discovery and notice of the potential conflict was of no consequence."[62]  Although the public defender's office also represented the victim-witness in an unrelated matter, Paez and the victim-witness were not represented by the same deputy public defenders.  Counsel was screened from any confidential or privileged information and did not access such information.[63]  Paez failed to demonstrate a basis on which it could be concluded that the public defender's office's prior representation of the victim-witness had any adverse effect on counsel's representation of Paez. The record shows that counsel's cross-examination of the victim-witness was vigorous and thorough.[64]  Counsel cross-examined the victim-witness on, *inter alia*, his drug use and gross misdemeanor conviction.[65]  And on April 22, 2010, the state prosecuting attorney contacted counsel to inform him that the public defender's office represented the victim-witness in 2003

---

[59] *Mickens v. Taylor*, 535 U.S. 162, 173 (2002).

[60] *Mickens*, 535 U.S. at 172 n.5; *see also Hovey v. Ayers*, 458 F.3d 892, 908 (9th Cir. 2006)(noting that the petitioner must demonstrate "that some plausible alternative defense strategy or tactic might have been pursued but was not and that the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests").

[61] *Mickens*, 535 U.S. at 171.

[62] ECF No. 28-5 at 4.

[63] ECF No. 26-29 at 5–6.

[64] ECF No. 27-1 at 92–119.

[65] *Id.* at 97–99.

for a gross misdemeanor offense.[66]  Paez has not demonstrated nor does the record show that the State was aware of a potential conflict prior to the date of the State's disclosure.  Because Paez has not demonstrated that his counsel had an actual conflict of interest that adversely affected his representation, the Nevada Supreme Court reasonably concluded that Paez was not deprived of his right to effective assistance of counsel as alleged in Grounds 1 through 4.

I would reach the same result on Ground 1 on *de novo* review.  In *Holloway v. Arkansas*,[67] a single public defender represented three defendants at the same trial.  The United States Supreme Court held that state trial courts are required to investigate timely objections to the multiple representation of co-defendants.[68]  The Sixth Amendment, however, does not require state trial courts to initiate inquiries into whether a potential conflict exists unless the trial court knows or reasonably should know that a particular conflict exists.[69]  Accordingly, under *Holloway*, the state court's alleged failure to conduct a conflict check at the time that counsel was assigned did not result in a violation of Paez's right to counsel.

Moreover, the Nevada Supreme Court's conclusion that the potential conflict was not imputed to counsel and that the state trial court's "decision to screen [counsel] was a prudent measure"[70] was not contrary to nor an unreasonable application of clearly established law as determined by the United States Supreme Court.  When counsel requested permission to withdraw shortly before trial was set to begin, the trial court heard argument on the conflict.[71] As the Nevada Supreme noted, the victim-witness was a former client of the public defender's office in an unrelated matter that occurred approximately four years prior.  The record did not indicate that there was a substantial relationship between the two cases or similar factual contexts

---

[66] ECF No. 26-28 at 3–4.

[67] *Holloway v. Arkansas*, 435 U.S. 475, 481–82 (1978).

[68] *Id.* at 483–487.

[69] *Cuyler*, 446 U.S. at 346–47.

[70] ECF No. 28-5 at 4.

[71] *See Holloway,* 435 U.S. at 475.

of the two representations.  Therefore, the Nevada Supreme Court's rejection of Paez's claim as asserted in Ground 3 was not contrary to nor an unreasonable application of clearly established federal law.

### 2. Ground 12 — ineffective assistance re: trial counsel's conflict of interest

In Ground 12, Paez asserts that trial counsel was unable to effectively represent him because of the client conflict.[72]  He argues that because trial counsel could not use confidential information, he was not capable of "putting on the best defense possible for Paez."[73]  He further provides that that his appellate counsel was a deputy public defender and the Nevada Supreme Court granted his appellate counsel's motion to withdraw.[74]  Respondents reiterate that Paez failed to identify any actual conflict that applied to his trial attorney.[75]  In Paez's state habeas appeal, the Nevada Supreme Court noted that it "rejected Paez's Sixth Amendment claim on appeal, determining that Paez had not demonstrated an actual conflict and the potential conflict could not be imputed to the deputy public defender who represented Paez at trial."[76]

I find that the Nevada Supreme Court's rejection of Paez's claim was neither contrary to nor an unreasonable application of clearly established laws as determined by the United States Supreme Court.  For the reasons discussed in the preceding section, the Nevada Supreme Court reasonably concluded that Paez failed to demonstrate an actual conflict resulting in an adverse effect on trial counsel's representation of Paez.  Further, the Nevada Supreme Court granted appellate counsel's motion to withdraw "based on the specific representations in the motion related to [appellate counsel]"[77] who was not the same deputy public defender that represented Paez at trial.  Accordingly, Paez is denied habeas relief on Ground 12.

---

[72] ECF No. 10 at 68–72.

[73] Id. at 69–70.

[74] Id.

[75] ECF No. 51 at 8–9.

[76] ECF No. 28-41 at 3, n.1.

[77] ECF No. 27-28 at 2, n.1.

### 3.      Ground 6 — denial of due process re: exclusion of evidence.

In Ground 6, Paez alleges that he was denied his constitutional rights because the state district court did not permit him to introduce "evidence that [Paez] did not own a .22 caliber firearm or revolver."[78]  The state district court sustained the State's objection to Paez introducing evidence that he had registered two firearms prior to an unrelated 2002 felony conviction for the purpose of showing that Paez did not own a .22 caliber revolver, the type of firearm used in the shooting.[79]  On direct appeal, the Nevada Supreme Court found no error in this ruling:

> Paez contends that he was deprived of his constitutional rights when he was not allowed to introduce evidence that he did not own a .22 caliber firearm.  "We review a district court's decision to admit or exclude evidence for abuse of discretion." *Mclellan v. State*, 124 Nev. 263, 267, 182 P.3d 106, 109 (2008).  During cross-examination, defense counsel asked a police detective whether Paez legally owned two handguns, the State objected, and the district court sustained the objection after a bench conference.  The district court made a record of the bench conference stating that Paez had registered the handguns before he was convicted of a felony and any questions as to why he would not register newly acquired handguns would open the door to evidence of the felony conviction.  We conclude from this record that the district court did not abuse its discretion by excluding evidence that Paez had legally owned firearms in the past.  *See* NRS 48.035(1).[80]

I find that the Nevada Supreme Court's rejection of Paez's claim was neither contrary to nor an unreasonable application of clearly established laws as determined by the United States Supreme Court.  The federal courts "are not a state supreme court of errors; we do not review questions of state evidence law."[81]  "[F]ederal habeas review of [state] trial error is limited to whether the error 'so infected the trial with unfairness as to make the resulting conviction a

---

[78] ECF No. 10 at 19–20.

[79] ECF No. 27-2 at 97–98.

[80] ECF No. 28-5 at 5.

[81] *Jammal v. Van de Kamp*, 926 F.2d 918, 919 (9th Cir. 1991).

14

1  denial of due process.'"[82]  Whether the admission of evidence violated state law "is no part of a

2  federal court's habeas review of a state conviction."[83]

3       The Nevada Supreme Court reasonably denied Paez's claim because the state district

4  court's decision to sustain the State's objection to introducing evidence of Paez's firearm

5  registration prior to his 2002 conviction did not infect the trial with unfairness or result in a

6  denial of due process.  The state district court reasoned that Paez "could legally own guns prior

7  to his conviction," but "he's not going to go in and register a gun when he's a convicted

8  person."[84]  As the Nevada Supreme Court noted, a line of questioning regarding why Paez would

9  not register newly acquired firearms would open the door to the introduction of evidence

10 regarding his felony conviction.[85]  The Nevada Supreme Court's determination that the state

11 district court did not abuse its discretion in its decision to exclude evidence where its probative

12 value is outweighed by the danger of prejudice was not contrary to clearly established law as

13 determined by the United States Supreme Court.  Accordingly, Ground 6 provides no basis for

14 habeas relief.

15       **4.      *Ground 13—ineffective assistance re: photographic line-up***

16       In Ground 13, Paez alleges that trial counsel was rendered ineffective for failing to move

17 to suppress the victim's identification of Paez by a "tainted" photographic line-up.[86]  Paez argues

18 that the photographic line-up was unnecessarily suggestive because his nickname "Bounce" was

19

20

21

22 [82] *Lewis v. Jeffers,* 497 U.S. 764, 780 (1990) (*quoting Donnelly v. DeChristforo,* 416 U.S. 637, 643 (1974)).

23 [83] *See Estelle v. McGuire*, 502 U.S. 62, 67 (1991).

24 [84] ECF No. 27-2 at 99.

25 [85] *See Montana v. Egelhoff*, 518 U.S. 37, 42 (1996) (due process rights are not offended by

26 exclusion of relevant evidence where its probative value is outweighed by danger of prejudice or confusion).

27

28 [86] ECF No. 10 at 74.

printed above his photo.[87]  In Paez's state habeas appeal, the Nevada Supreme Court found no

error:

> Paez argues that trial counsel failed to move to suppress the
> photographic-lineup identification on the ground that it was
> impermissibly suggestive because the alleged shooter's nickname
> was printed next to his photograph.  The lineup was not
> impermissibly suggestive because the men pictured in the lineup
> matched the victim's description of the perpetrator and the victim
> had previously met Paez socially, gave a description of the shooter
> that matched Paez, and was certain about his identification, both
> initially and at trial.  *See Thompson v. State*, 125 Nev. 807, 813–
> 14, 221 P.3d 708, 713 (2009) ("A photographic identification must
> be set aside only if the photographic identification procedure was
> so impermissibly suggestive as to give rise to a very substantial
> likelihood of irreparable misidentification." (internal brackets and
> quotation marks omitted)).  Contrary to Paez's assertion, the
> shooter's nickname was used as the lineup name and was not
> associated with any individual photograph included in the array.
> Paez did not show deficient performance or prejudice.
> Accordingly, the district court did not err in denying this claim
> without an evidentiary hearing.[88]

I find that the Nevada Supreme Court's rejection of Paez's claim was neither contrary to

nor an unreasonable application of *Strickland*.  Counsel's decision not to file a motion to

suppress regarding the victim's identification of Paez by photographic line-up did not amount to

"incompetence under prevailing professional norms."[89]  The victim-witness testified that he had

met Paez on two separate occasions prior to the day of the shooting and had also identified the

apartment building where he had met Paez.[90]  The victim-witness provided a physical description

that matched Paez as well as the nickname "Bounce."[91]  And as the Nevada Supreme Court

noted, it was the photographic line-up that was titled "Bounce," not any of the specific photos in

the array.

---

[87] *Id.*

[88] ECF No. 28-41 at 3–4.

[89] *Harrington*, 562 U.S. at 104.

[90] ECF No. 27-1 at 54; ECF No. 27-2 at 43, 84.

[91] ECF No. 27-2 at 40.

1    Accordingly, Paez did not demonstrate that there was a basis for objectively reasonable

2 counsel to successfully move to suppress the identification of Paez by photographic line-up.

3 Counsel's decision not to file a motion to suppress does not fall "outside the wide range of

4 professionally competent assistance."[92]  In order to prevail on an ineffective assistance of

5 counsel claim, Paez must show that his counsel acted deficiently and "a reasonable probability

6 that, but for counsel's [deficiencies], the result of the proceeding would have been different."[93]

7 However, I need not "address both components of the inquiry" if there is "an insufficient

8 showing on one."[94]  Paez has not sufficiently demonstrated here his counsel's "representation

9 fell below an objective standard of reasonableness."[95]  Therefore, the *Strickland* inquiry can stop

10 here, and Paez is denied federal habeas relief on Ground 13.

11    **5.    *Ground 7—denial of due process re:  in- and out-of-court identification***

12    In Ground 7, Paez alleges that the state district court erred in admitting the victim's in-

13 and out-of-court identifications of Paez because such identifications were "tainted by use of a

14 blatantly suggestive photographic line-up that displayed [Paez's] alleged nickname over the top

15 of [his] picture."[96]  On direct appeal, the Nevada Supreme Court found this unpreserved

16 objection not to be plain error:

17
        Paez contends that he was deprived of his constitutional rights
18      when the district court admitted identification evidence because the
        victim's in-court and out-of-court identifications were based on an
19      unnecessarily suggestive photographic line-up, which was also
        admitted into evidence.  However, Paez did not object to the
20      admission of this evidence and the error is not plain from our
        review of the record.  *See Thompson v. State*, 125 Nev. 807, 813,
21      221 P.3d 708, 713 (2009) ("A photographic lineup is suggestive if,
        given the totality of the circumstances, the procedure was so
22      unduly prejudicial as fatally to taint the defendant's conviction."
        (internal quotation marks and brackets omitted)); *Valdez*, 124 Nev.

23

24 _____

   [92] *Strickland*, 466 U.S. at 690.

25 [93] *Id.* at 694.

26 [94] *Id.* at 697.

27 [95] *Id.*

28 [96] ECF No. 10 at 22.

17

1      at 1190, 196 P.3d at 577 (reviewing unpreserved claims for plain error).[97]

2      I find that the Nevada Supreme Court's conclusion was neither contrary to nor an

3   unreasonable application of clearly established federal laws.  The admission of evidence does not

4   provide a basis for habeas relief unless it rendered the trial fundamentally unfair in violation of

5   due process.[98]  Further, "[u]nder AEDPA, even clearly erroneous admissions of evidence that

6   render a trial fundamentally unfair may not permit the grant of federal habeas relief if not

7   forbidden by 'clearly established Federal law,' as laid out by the Supreme Court."[99]  The United

8   States Supreme Court "has not yet made a ruling that admission of irrelevant or overtly

9   prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the

10   writ."[100]  Moreover, under clearly established United States Supreme Court authority, even a

11   suggestive identification procedure does not violate the Constitution unless it renders the

12   identification unreliable under the totality of the circumstances.[101]

13      Upon review of the record, the Nevada Supreme Court reasonably found no error with

14   the victim-witness's identification of Paez based on the photographic line-up.  In Paez's state

15   habeas appeal and for the reasons stated above, the Nevada Supreme Court found that the

16   photographic line-up was not impermissibly suggestive.[102]  Further, under the totality of the

17   circumstances, the victim's identification of Paez was not rendered unreliable.  Because the

18   admission of the in-court and out-of-court identifications did not infect the trial with unfairness

19

20

---

[97] ECF No. 28-5 at 5–6.

[98] *Estelle*, 502 U.S. at 67–68.  *See also Johnson v. Sublett*, 63 F.3d 926, 930 (9th Cir. 1995).

[99] *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009) (citing 28 U.S.C. § 2254(d)); *see also Dowling v. United States*, 493 U.S. 342, 352 (1990) (explaining that the United States Supreme Court has "defined the category of infractions that violate 'fundamental unfairness' very narrowly").

[100] *Yarborough*, 568 F.3d at 1101.

[101] *See Manson v. Brathwaite*, 432 U.S. 98, 113 (1977); *Neil v. Biggers*, 409 U.S. 188, 199 (1972); *see also Perry v. New Hampshire*, 565 U.S. 228, 245 (2012).

[102] ECF No. 28-41 at 3–4.

as to make Paez's conviction a denial of due process, habeas relief is not warranted on Ground 7.

### 6.     Grounds 9D and 11 — ineffective assistance re: appellate counsel

In Ground 9(D), Paez alleges that appellate counsel failed to properly raise the issue that Paez was denied his Sixth Amendment right to conflict-free counsel because the public defender's office did not perform a conflict check.[103]  In Ground 11, Paez asserts that he was denied effective assistance of appellate counsel due to the cumulative effect of the errors of appellate counsel.[104]  But Paez did not assert any cumulative-error claims in state court, and I permitted Ground 11 to proceed to the extent any ineffective-assistance-of-appellate-counsel claims were procedurally viable.[105]  As Ground 9(D) remains as the only procedurally viable claim of ineffective assistance of counsel, I review Grounds 9(D) and dismiss Ground 11.

In Paez's state habeas appeal, the Nevada Supreme Court found no error:

> Paez first argues that trial counsel had a conflict of interest but failed to move to withdraw and that appellate counsel failed to assert a Sixth Amendment challenge based on the purported conflict.  Both claims are belied by the record as trial counsel attempted to withdraw multiple times and appellate counsel raised the issue on appeal.  The district court therefore did not err in denying the claim without an evidentiary hearing.[106]

I find that the Nevada Supreme Court reasonably rejected Paez's claim because the record belied his contention that appellate counsel failed to raise on appeal the issue that Paez was denied conflict-free counsel.  On direct appeal, appellate counsel alleged, *inter alia*, that the public defender's office's "failure to conduct a complete check in a timely manner, regardless of the reason for the failure, denied [Paez] of his constitutional right to effective assistance of independent counsel."[107]  That claim sufficiently set forth the claim that Paez was denied conflict-free counsel in violation of his Sixth Amendment rights.  The record belies Paez's claim,

---

[103] ECF No. 10 at 59.

[104] *Id.* at 66.

[105] ECF No. 43 at 8–9.

[106] ECF No. 28-41 at 3.

[107] ECF No. 27-39 at 24.

1   which is factually inaccurate; the Nevada Supreme Court reasonably concluded that he failed to

2   show ineffective assistance of appellate counsel.  Paez is, therefore, denied habeas relief on

3   Grounds 9(D) and 11.

4          *7.       Ground 14—ineffective assistance re: failure to call witness*

5          In Ground 14, Paez alleges that he was denied effective assistance of counsel because his

6   trial counsel failed to investigate and call Sanford as a witness.[108]  Paez asserts that Sanford

7   would have testified that Paez did not shoot the victim.[109]  In Paez's state habeas appeal, the

8   Nevada Supreme Court found no merit to this argument:

> Paez argues that trial counsel failed to investigate and call G.S. to
> testify.  Paez has merely speculated that G.S.'s testimony would be
> favorable without alleging specific facts to which she would
> testify.  *See Molina v. State*, 120 Nev. 185, 192, 87 P.3d 533, 538
> (2004) (Petitioner claiming counsel did not conduct adequate
> investigation must specify what a more thorough investigation
> would have uncovered).  Further, the record shows that had
> counsel called G.S. to testify, the State could discredit her
> testimony as biased toward Paez based on her tattoo of his initials
> and jail calls discussing changing her story to exculpate Paez and
> showing her close relationship with Paez.  *See Doleman v. State*,
> 112 Nev. 843, 848, 921 P.2d 278, 280–81 (1996) ("A strategy
> decision, such as who should be called as a witness, is a tactical
> decision that is virtually unchallengeable absent extraordinary
> circumstances." (internal quotation marks omitted)).  Accordingly,
> Paez failed to alleged [sic] sufficient facts that, if true, would
> demonstrate deficient performance and prejudice.  The district
> court therefore did not err in denying this claim without an
> evidentiary hearing.[110]

19          I find that the Nevada Supreme Court's rejection of Paez's claim was neither contrary to

20   nor an unreasonable application of *Strickland*.  In assessing counsel's investigation, I must

21   conduct an objective review of counsel's performance, measured for "reasonableness under

22   prevailing professional norms."[111]  This includes a context-dependent consideration of the

23

24   ---

25   [108] ECF No. 10 at 77.

26   [109] *Id.* at 79–80.

27   [110] ECF No. 28-41 at 3–4.

28   [111] *Strickland,* 466 U.S. at 688.

challenged conduct as seen "from counsel's perspective at the time."[112]  Further, "strategic

choices made after thorough investigation of law and facts relevant to plausible options are

virtually unchallengeable."[113]

The Nevada Supreme Court reasonably determined that Paez failed to demonstrate his

trial counsel's investigative decisions and failure to call Sanford as a witness in support of Paez's

defense were objectively unreasonable.  As noted by the Nevada Supreme Court, if Sanford had

been called as a witness, the State could have discredited her as biased towards Paez.  Recorded

telephone calls between Paez and Sanford show that Paez and Sanford had a romantic

relationship.[114]  Sanford had a tattoo of Paez's initials and Paez spoke to her about covering the

tattoo.[115]  In addition, Sanford had admitted to a detective that she was in a car with Paez and the

victim on the day of the shooting, which corroborated the victim's testimony.[116]  For all these

reasons, it was reasonable to find Paez had not shown his counsel was deficient.  Therefore, the

Nevada Supreme Court reasonably determined Paez did not demonstrate his counsel fell below

an objective standard of reasonableness in accordance with the first prong of *Strickland.*

### 8.      *Ground 15—ineffective assistance re: failure to obtain expert witness*

In Ground 15, Paez alleges that his trial counsel rendered ineffective assistance because

counsel failed to obtain an expert regarding the victim-witness's methamphetamine use for the

purpose of impeaching the victim-witness's credibility.[117]  In Paez's state habeas appeal, the

Nevada Supreme Court rejected this claim:

> Paez argues that trial counsel failed to call an expert to testify
> about the effect of regular methamphetamine usage on the victim's
> ability to perceive and remember the shooting Paez failed to show
> prejudice where trial counsel cross-examined the victim on the use

---

[112] *Id.* at 689.  *See Wiggins v. Smith*, 539 U.S. 510, 523 (2003).

[113] *Strickland,* 466 U.S. at 690.

[114] ECF No. 27-2 at 62–66.

[115] *Id.*

[116] *Id.* at 18.

[117] ECF No. 10 at 82.

> of methamphetamine and the paramedic and detective who spoke
> with the victim shortly after the shooting each testified that the
> victim was coherent, able to communicate, and not intoxicated.
> Accordingly, the district court did not err in denying this claim
> without an evidentiary hearing.[118]

The Nevada Supreme Court's determination that Paez failed to demonstrate prejudice was not an unreasonable application of *Strickland*. Paez failed to demonstrate a reasonable probability that, but for counsel's failure to call an expert to testify about the effect of regular methamphetamine usage on the victim's ability to perceive and remember the shooting, the outcome of the trial would have been different. Counsel cross-examined the victim on his methamphetamine use.[119] Counsel elicited testimony that the victim had a glass pipe and lighters in his possession on the night of the shooting.[120] The victim-witness, however, testified that he did not use any drugs on the night of the shooting.[121] Further, the paramedic that assessed the victim's injuries shortly after the shooting testified that the victim was oriented and appropriately answering questions.[122] The detective that interviewed the victim at the hospital shortly after the shooting testified that the victim communicated clearly and did not appear to be under the influence of a controlled substance.[123] Therefore, the Nevada Supreme Court reasonably determined that Paez failed to demonstrate that he was prejudiced by counsel's failure to call an expert witness. Paez is denied habeas relief on Ground 15.

---

[118] ECF No. 28-41 at 4–5.

[119] ECF No. 27-1 at 96–98.

[120] *Id.* at 113–14.

[121] *Id.* at 114.

[122] *Id.* at 139–40.

[123] ECF No. 27-2 at 14.

### 9.     Ground 10

In Ground 10, Paez alleges constitutional violations based on the cumulative effect of trial counsel's ineffective assistance.[124]  Although he did not assert any cumulative-error claims in state court, I ruled that Ground 10 could proceed to the extent of any procedurally viable ineffective-assistance-of-trial-counsel claims asserted in this action.[125]  The cumulative effect of multiple errors can violate due process and warrant habeas relief where the errors have "so infected the trial with unfairness as to make the resulting conviction a denial of due process."[126]  However, as I have determined that Paez has not shown trial counsel rendered ineffective assistance, there are no errors to consider cumulatively.  Accordingly, the claim in Ground 10 fails and Paez is denied habeas relief on Ground 10.

## C.     Certificate of Appealability

The right to appeal from the district court's denial of a federal habeas petition requires a certificate of appealability.  To obtain that certificate, the petitioner must make a "substantial showing of the denial of a constitutional right."[127]  "Where a district court has rejected the constitutional claims on the[ir] merits," that showing "is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."[128]  Because I have rejected petitioner's constitutional claims on their merits, and he has not shown that this assessment of his claims is debatable or wrong, I find that a certificate of appealability is unwarranted in this case.

---

[124] ECF No. 10 at 64.

[125] ECF No. 43 at 8.

[126] *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); *Parle v. Runnels*, 505 F.3d 922, 927 (9th Cir. 2007).

[127] 28 U.S.C. § 2253(c).

[128] *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also James v. Giles*, 221 F.3d 1074, 1077–79 (9th Cir. 2000).

**Conclusion**

IT IS THEREFORE ORDERED that the petition **[ECF No. 10] is DENIED**.

And because reasonable jurists would not find my decision to deny this petition to be debatable or wrong, a **certificate of appealability is DENIED**.

The Clerk of Court is directed to ENTER JUDGMENT accordingly and CLOSE THIS CASE.

Dated: March 3, 2021

_____
U.S. District Judge Jennifer A. Dorsey

24